SHORES, Justice.
The question presented by this case is what amount, if any, the Alabama Insurance Guaranty Association (the “AIGA”) is obligated to pay on a “covered claim” for uninsured motorist (“UM”) benefits under a policy of insurance issued by the now insolvent Champion Insurance Company. A collision occurred on Interstate Highway 10 near Tallulah, Mississippi, on March 20, 1982. Thurman G. Gibson was struck by an unidentified hit-and-run driver. Gibson was employed by Brookwood Oil Field Service, Inc., and the injuries he sustained were incurred while he was acting in the line and scope of his employment.
On April .13, 1988, Gibson filed a complaint in the Circuit Court of Jefferson County, Alabama, against Champion Insurance Company (his personal automobile liability carrier), Jim Walter Resources Insurance Services, and Employer’s Casualty Company (the carrier for Brookwood). Under § 32-7-23, Ala.Code 1975, the vehicle that caused the accident was an uninsured motor vehicle. State Farm Fire & Cos. Co. v. Lambert, 291 Ala. 645, 285 So.2d 917 (1973). Therefore, Gibson sought damages via the UM provisions of the liability policies issued by the defendants to his employer and to him for personal injuries, lost wages, and mental anguish.
Brookwood’s policy of automobile insurance with Employer’s Casualty Company provided coverage to Gibson in the amount of $40,000 per vehicle. More than three vehicles were insured under the policy. Gibson made a $120,000 claim under the Employer’s policy, this sum being the limit of the UM coverage that he was entitled to “stack” under Alabama law. Gibson then entered into a pro tanto settlement with Employer’s for that amount. Brookwood was dismissed with prejudice from the lawsuit, as was Jim Walter Resources Insurance Services.
On June 5, 1989, Champion Insurance Company consented to a finding of insolvency and was ordered into liquidation by the 19th Judicial Circuit District Court of the State of Louisiana. Gibson amended his complaint on March 14, 1991, to substitute the AIGA as a party defendant in place of Champion Insurance Company. Because of the settlements with the other carriers, the AIGA was left as the only defendant in the suit.
Gibson’s claim against the AIGA is governed by the provisions of the Alabama Insurance Guaranty Association Act, Ala. Code 1975, § 27-42-1 et seq. The AIGA answered Gibson’s amended complaint and moved for a summary judgment. At the hearing on the summary judgment motion, the parties stipulated that a reasonable amount of damages to compensate for the injuries sustained by Gibson as a result of the accident would be at least $160,000, and that Gibson had received $120,000 through his settlement with Employer’s.
The trial judge entered a summary judgment in favor of the AIGA, setting off the $120,000 settlement in UM benefits paid by Employer’s against the $40,000 UM benefits for which Champion was liable to Thurman under his own UM policy, and finding that the AIGA had no liability to Gibson. This appeal followed. We reverse and remand.
Section 27-42-12(a) reads as follows:
“Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.”
This section is sometimes referred to as the nonduplication provision of the AIGA Act. As this Court has said in another opinion issued this date in a related case:
“Specifically, § 27-42-12 provides that if one first exhausts other available in *418 surance coverage, he or she may then proceed against the AIGA as the guaranty fund for an insolvent insurer. However, this Code section (the ‘offset statute’), entitled ‘Exhaustion of rights; non-duplication of recovery,’ also provides that the amounts first recovered offset or reduce the ‘covered claim’ with the AIGA. This has been construed to have a limited meaning: if recovery from the AIGA would be a duplication of amounts already recovered, the amount of the duplicated (‘windfall’) sums cannot be recovered from the AIGA. Alabama Ins. Guar. Ass’n v. Magic City Trucking Serv., Inc., 547 So.2d 849, 852-53 (Ala.1989). For example, we have held that where a claimant recovers uninsured motorist (‘UM’) coverage because the tort-feasor’s liability insurer is insolvent, the claimant cannot also recover from the AIGA on the full amount of the insolvent company’s liability coverage. Alabama Ins. Guar. Ass’n v. Hollingsworth, [Ms. 1900334, June 7, 1991], 1991 WL 101543 (Ala.1991), reh’g pending; Windle v. Alabama Ins. Guar. Ass’n, 591 So.2d 78 (Ala.1991). In this instance, one could claim for UM coverage only because, as a result of the insurer’s insolvency, there was no liability coverage. To receive the full amount of both liability coverage and UM coverage would be a double recovery, and to the extent of the duplicate recovery, calculated by subtracting the UM recovery from the AIGA coverage, the AIGA’s obligation for payment is offset.”
Alabama Ins. Guar. Ass’n v. Hamm, 601 So.2d 419 (Ala.1992). (Emphasis in original.)
The stated purpose of the Alabama Insurance Guaranty Association Act is “to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer.” § 27-42-2. In creating the AIGA, the Alabama legislature said that the Act “shall be liberally construed to effect the purpose under § 27-42-2 which will constitute an aid and guide to interpretation.” § 27-42-4.
As previously noted, § 27-42-12(a) provides:
“Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of the recovery under such insurance policy.”
Here the plaintiff had a claim against his employer’s insurer under the UM provisions of his employer’s insurance contract, because this Court has held that one injured by a phantom driver is entitled to recover under the UM provisions of his insurance policy or any policy under which he is an insured. Under the statute, he is required “to exhaust first his rights under such policy.”
Likewise, the plaintiff here has a claim under the policy issued by his own insurance company because he is an insured under that policy and he has been injured by a person who was an uninsured motorist under the UM provisions of that policy. He may recover from the AIGA on the basis of the liability of his own insurer only to the extent that his injuries exceed the amount he has been paid under his employer’s policies. “Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such [i.e., the employer’s] insurance policy.” § 27-42-12(a).
Because the plaintiff’s insurer is insolvent, he may recover against the AIGA. The AIGA, like his insolvent insurer, is liable only to the limits of the policy, and it is liable only insofar as the damages for the plaintiff’s injuries exceed the amount he has recovered under his employer’s policies.
The plaintiff is entitled to UM coverage under both his employer’s policies and his own policy, not because the tortfeasor’s insurer is insolvent, but because the plaintiff was injured by a phantom driver. Were he seeking recovery under the UM provisions of either his policy or his employer’s policies because the tort-feasor *419 was insolvent, he could not recover any amount from the AIGA, because to permit any recovery from the AIGA in such a case would be to duplicate a recovery. The very incident that triggered the UM coverage in that instance, the insolvency of the tort-feasor’s insurer, would create a windfall to the plaintiff were the plaintiff then entitled also to recover from the AIGA. This Court has said that the statute was designed to prevent a windfall. Alabama Ins. Guar. Ass’n v. Magic City Trucking Serv., Inc., supra, at 852.
For the foregoing reasons, the judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.